NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued January 30, 2008
Decided February 12, 2008

**Before**

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-4218

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, <br><br> *v.* <br><br> JEFFREY ARNOLD, <br> *Defendant-Appellant*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division <br><br> No. 05-CR-478-1 <br><br> James F. Holderman, <br> *Chief Judge*. |

**O R D E R**

While on active military duty in Iraq, Jeffrey Arnold began engaging in sexually explicit conversations over the Internet with an undercover agent in Illinois who he believed was a 12-year-old girl.  After returning from Iraq and sending another young girl what he described as "kiddie porn," Arnold pleaded guilty to one count of knowingly transporting child pornography through interstate commerce.  *See* 18 U.S.C. § 2252A(a)(1).  For the purposes of sentencing, he also stipulated to using a computer to knowingly persuade, induce, and entice a minor to engage in sexual activity, and knowingly possessing more than 100 images of child pornography on his computer.  The district court sentenced Arnold to the statutory maximum of 20 years' imprisonment.  On appeal Arnold challenges his sentence, arguing that it is unreasonable in light of the factors listed in 18 U.S.C. § 3553(a).  Here, in brief, are the facts.

In September 2004, while serving in the United States Army in Iraq, Arnold began communicating in an Internet chat room—it was called "girls 7 to 12 Models:1"— with "Mandy," who he thought was a 12-year-old girl.  Actually, "Mandy" was an undercover agent employed by the Cook County Sheriff's Department in Illinois.  Over the next several months, Arnold communicated with Mandy by email, instant message, web camera, and cell phone, and discussed meeting her in person.  After returning from Iraq, Arnold continued communicating with Mandy.  In April 2005 he emailed her, on three separate occasions, photographs of prepubescent female minors performing oral sex on adult males.  He also used a web camera to send Mandy real-time images of himself masturbating.

In May 2005 Arnold began communicating with a 15-year-old girl (who was not an undercover agent) in Portland, Oregon, through an Internet chat room and instant messaging.  He also tried to send her a computer file with a photograph of a minor girl performing oral sex on an adult male, and he discussed with her whether she would run away to meet him and engage in sexual activity.  Finally, Arnold communicated several times with a second undercover officer posing as a minor female (this time the name was "Vanessa") in San Antonio, Texas, conducting communications similar in nature to those he had with Mandy.

Arnold was arrested in May 2005 based on his communications with Mandy.  FBI agents found more than 600 images of child pornography on his computer. Arnold was indicted on one count of using interstate commerce to knowingly persuade, induce, entice, or coerce a minor to engage in any sexual activity for which he could be charged with a criminal offense, *see* 18 U.S.C. § 2422(b), and three counts of knowingly transporting child pornography through interstate commerce, *see* § 2252A(a)(1).  Arnold pleaded guilty to one count of knowingly transporting child pornography, and in doing so he stipulated to communicating with the 15-year-old girl in Oregon about meeting in person to engage in sexual activity, and to knowingly possessing at least 100 images of child pornography on his computer.  The government agreed to dismiss the remaining charges and promised that Arnold would not be prosecuted in the districts in which the stipulated offenses occurred.

The probation officer who prepared the presentence investigation report recommended that Arnold receive 20 years' imprisonment—the statutory maximum for transporting child pornography in interstate commerce.  *See* 18 U.S.C. § 2252A(b)(1).  After calculating a guidelines offense level of 41 (which Arnold does not challenge on appeal), the probation officer set the guideline range at 324 to 405 months.  At sentencing, the government agreed that Arnold was entitled to an additional point for acceptance of responsibility.  After the point was deducted, a guideline range of 292 to 365 months, which is not challenged, was established.  The statutory maximum sentence of 20 years capped Arnold's possible sentence.  *See* U.S.S.G. § 5C1.1(a).

At sentencing Arnold argued that he should receive the statutory minimum of five years after applying the factors in § 3553(a).  He presented testimony from his commanding officer in Iraq and a psychologist who examined him after his arrest to argue that his history and characteristics warranted a

more lenient sentence. Arnold joined the Marines after high school but was honorably discharged due to injury. He re-enlisted in the Army in December 2003 and was sent to Iraq in March 2004, where he served as an ambulance driver. Captain Robert W. Bradley, his commanding officer, testified that Arnold was "held in the highest esteem by everyone" and that he chose Arnold as his personal driver. He also described an incident in which another base was attacked and Arnold immediately drove to the scene to offer aid despite the chance of continued attacks.

The psychologist, Dr. Steven Farmilant, testified that Arnold suffered from post-traumatic stress disorder (PTSD) resulting from being sexually molested as a child and that his service in Iraq exacerbated the PTSD. He testified that as a teenager Arnold began using sex to self-soothe and took a counterphobic approach, calling telephone hotlines and looking at pornographic magazines, to master the humiliation he suffered as a child. Arnold reacted to the stress he experienced in Iraq by seeking sex outlets online. Dr. Farmilant testified that his "clinical gut" told him that Arnold did not intend to meet Mandy because Arnold used role playing to self-soothe and never completed real acts. Yet, Dr. Farmilant also testified that without treatment Arnold would need increased stimulation to cope, which could result in his eventually meeting a minor to have sex. And Dr. Farmilant did not learn that Arnold had also communicated with the 15-year-old girl in Oregon until he was told so at the sentencing hearing. In response, Dr. Farmilant said that "it would indicate that the addictive process was more advanced than I had thought."

After applying the § 3553(a) factors, including consideration of Arnold's personal and military history, the district court sentenced him to 20 years' imprisonment. The court analyzed each factor, placing particular emphasis on the need to protect the public from further crimes of the defendant.

We review criminal sentences for reasonableness. *United States v. Acosta*, 474 F.3d 999, 1001 (7th Cir. 2007). Because Arnold does not challenge the district court's guidelines calculation, and because the calculation was accurate, his sentence is presumptively reasonable on appeal. *See Rita v. United States*, 127 S. Ct. 2456, 2462 (2007); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Arnold may rebut that presumption, however, by showing that his sentence is unreasonable when measured against the factors in § 3553(a). *See United States v. Hankton*, 463 F.3d 626, 628 (7th Cir. 2006); *Mykytiuk*, 415 F.3d at 608.

Imposing a "reasonable" sentence in a case like this is more art than science. Who is to say that another sentence, say 10 or 15 years, would not be reasonable in a case like this? But all we can do in this, or any other case, that comes to us on appeal today, is require district judges to (1) determine the advisory guideline range and (2) consider the § 3553(a) factors. And the judge, of course, has "enormous latitude" in attaching weight to those factors, many of which, like promoting "respect for the law" and delivering "just punishment" are quite squishy. *See United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007). With that in mind, we turn to Arnold's arguments why his sentence should be set aside.

Arnold contends that his sentence is unreasonable for several reasons. First, he says the statutory maximum should be reserved for the worst offenders, but that he is not the worst offender because he did not meet or have sex with a child. *See* § 3553(a)(1). He also argues for leniency because his PTSD was exacerbated while he was in Iraq, he served honorably in the military, and he has no criminal history. Second, Arnold contends that the 20-year sentence will not deter future criminal conduct more than a shorter sentence would. *See* § 3553(a)(2)(B). Third, he argues that his sentence is longer than necessary to protect the public because he did not have sex with any child and did not view children in a sexually explicit manner until he was in Iraq. *See* § 3553(a)(2)(C). Fourth, although he concedes that he needs medical treatment, 20 years is longer than necessary to provide such treatment. *See* § 3553(a)(2)(D). Fifth, Arnold contends that by receiving the statutory maximum he did not benefit from pleading guilty, cooperating with the government, and accepting responsibility. Finally, Arnold argues that his sentence is longer than necessary to reflect the seriousness of the crime, promote respect for the law, and provide just punishment, *see* § 3553(a)(2)(A), though he does not say why.

As for the § 3553(a) factors, the district judge went beyond what is required as he clearly gave meaningful consideration to each of them. *See United States v. Laufle*, 433 F.3d 981, 987 (7th Cir. 2006) (holding that district court need not make findings on each factor as long as record shows "meaningful consideration of the types of factors" in § 3553(a)). The judge recognized Arnold's abuse as a child, as well as his military service, calling him "courageous." *See* § 3553(a)(1). He also observed that "there are two Jeffrey Arnolds"—the one who gave an "eloquent" statement at sentencing and wants to continue to serve his country and the other who committed a crime involving child pornography. The judge concluded, however, that Arnold had to take responsibility for the crime he committed and determined that the other factors weighed in favor of a 20-year sentence.

The judge found that the need to protect the public was a "key factor," and he could not be sure that the statutory minimum sentence would adequately protect the public. *See* § 3553(a)(2)(C). He also said that the crime Arnold committed was worse than other crimes because it affects children for their entire lives. *See* § 3553(a)(2)(A). To justify imposing the statutory maximum, the judge pointed to Congress's recognition of the heinous nature of the crime and Arnold's inability to adequately explain why he committed the offense. *See* § 3553(a)(2)(A). Although the judge questioned whether long sentences for child pornography crimes are generally deterrent, he found that 20 years was necessary here because Arnold knew what he was doing was wrong. *See* § 3553(a)(2)(B). Finally, the judge found that a 20-year sentence would avoid unwarranted disparities among defendants with similar records, noting that he had likewise sentenced others who had been similarly successful in their professional lives to the statutory maximum. Given the "enormous latitude" available to the sentencing judge, we must conclude that we have no alternative other than to conclude that Arnold's sentence was reasonable.

For the foregoing reasons, we AFFIRM the judgement of the district court.